## LEE v. FOUSHEE.

### Opinion delivered June 7, 1909.

1. SPECIFIC PERFORMANCE—MISTAKE.—Equity will decree specific performance where the testimony shows that defendant sold the land in question to plaintiff but failed to join his mother in making the deed because of a mistaken view that the title to the land was in her and not in him. (Page 473.)

2. STATUTE OF FRAUDS—PART PERFORMANCE.—A parol sale of land is taken without the statute of frauds where the vendee pays the purchase money, takes possession under his contract of purchase and makes valuable and permanent improvements. (Page 474.)

Appeal from Jackson Chancery Court; *George T. Humphries,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

Plaintiff (appellee) alleged in his complaint that he is the son and only heir of the body of William A. Foushee; that said William A. was the son mentioned in section 7 of the will of Jos. P. Foushee; that said Jos. P. Foushee had died, and his will had been duly probated; that William A. had died, leaving plaintiff his son and sole heir of his body. That said section 7 of said will granted to said William A. and the heirs of his body the lands described, said bequest being as follows: "As an advancement, and at the value of one thousand dollars, I hereby give and bequeath to my beloved son, William A. Foushee, and the heirs of his body, the following lands (describing them)." That said William A. under said grant, after the death of Joseph P., went into possession thereof, using and occupying them until his death. That said grant gave a life estate to plaintiff's father, William A., the remainder going to plaintiff in fee. The complaint further alleged the wrongful possession of defendant (appellant) for three years past, and prayed judgment for possession and rents.

In his answer appellant (defendant below) uses this language: "Admits that said Jos. P. Foushee departed this life on the .. day of ...., and that he executed a will by which he devised the lands in controversy to Wm. A. Foushee, but denies that said Wm. A. Foushee took an estate for life only, but says said will vested in said Wm. A. Foushee said lands in fee simple." Then for cross complaint there are allegations of a sale by Wm. A. to Mary V., and of Mary V. to himself, in which he alleges appellant joined, and that Mary V. and appellee were jointly in possession, and both sold to appellant, putting him in possession; that he made valuable and lasting improvements, which he sets up and describes specifically. There were other allegations unnecessary to mention. Appellant prays for specific performance and for general relief.

Appellee denied all the material allegations of the cross-complaint. The cause was transferred to equity.

The testimony on behalf of appellee is as follows: Mrs. Hite testifies that Mrs. Mary V. Foushee was in feeble health a long while; that she was living with her at the time of her death; that the defendant came there to see her about buying the place; that he was not then with Mack (appellee); that Mrs. Foushee had $1,000 of her own; that Mack would come sometimes to see his mother, but that he and Lee were never there together; that Mrs. Foushee said that her reason for wanting to get rid of the place was that she was afraid of a judgment against old man Foushee by Rankin, and they would come back on her.

Witness C. R. Hite, on behalf of appellee, testified as follows: "Mack Foushee (appellee) rented a house from me about seven or eight blocks from his mother's. I made an abstract of the Foushee land that John Lee bought. He and Ike Goldman came to my office, and had the abstract with them. I told Lee he had better get Mack Foushee to sign the deed to make his title good, to make the conveyance good. Afterward John Lee told me he told his lawyer about it, and his lawyer told him not to pay any attention to me. I told him that it was material that Mack Foushee sign the deed. I told him at the time he came into my office with Mr. Goldman that it would be necessary for Mack Foushee to sign it in order to make the title good, and they came back afterwards, and told me what the attorney said."

Appellee testified as follows: "I am the only child of Wm. A. Foushee. I did not have anything to do with the sale of the land. I never heard her (witness' mother) and John Lee say anything about it; was never present when she had any negotiations with Lee at Mrs. Hite's or elsewhere. I don't know the date my mother made the deed. I was working at the button factory. Some one called up from Wolff-Goldman's store, and asked me to come up to the store. When I got to the store, she and Mr. Goldman were talking, and I walked up, and she said: 'Well, I have sold the place.' And I said: 'Well, I haven't signed the deed, nor I ain't going to.' And she said: 'Well, you don't have to, because the lawyers say it isn't necessary.' She had been mad at me. She didn't like my wife, and she wanted to get rid of the land. I asked her what kind of a deed she had made, and she told me she gave him a quitclaim deed; that John Lee wanted her to make a warranty deed, but she would not do it because she sold it, thinking that maybe McDonald or my wife would come back on her some time for some money. She had the check, and that time she and John Lee were talking about who would pay the taxes, and she and John Lee went to the bank, and she told me she got $1,500 for the place. I don't know who the check was payable to; never saw it, never indorsed; don't know anything about Hennessy's note being turned over to Lee; didn't have anything to do with it. I wasn't present when the deed was executed; didn't tell Judge Phillips I would sign the deed; didn't know John Lee was the one who bought the place until the day it was sold: I saw him in front of Wolff & Goldman's store, and I told him I would not sign the deed, and he said his lawyer told him it would not be necessary. He afterwards offered me $1,000. There was a lawsuit between McDonalds and Sallie Rankin, and my grandfather was guardian for Sallie Rankin, and he compromised her estate, and my mother was afraid the Rankins would beat McDonalds, and McDonalds would come back on her guardian for the money that they paid for the place. And my mother didn't get along with my wife. She said she would give her property away before my wife should ever have anything she had. When I got to the store, she (my mother) said she had already sold the place and made the deed. She wanted to try to get me to sign the deed. I told

her I would not do it, because it was made to my father and myself, and I didn't think she had a right to sell it. I went to see Judge Phillips about getting a divorce. He told me if I used any of this money I could not sue for the place. I did not talk to him but once, and that was in his office. I did not tell tell him that she had the money she and I sold the place for. I didn't tell him I didn't know very much about her business."

Appellant in his own behalf testified that he bought the land in controversy from J. M. Foushee (appellee) and Mary V. Foushee; that he made the contract for the purchase at the house of Mrs. Mary V. Foushee; that no one was present at the time except appellant, Mrs. Mary V. Foushee and J. M. Foushee; that afterwards he paid fifteen hundred dollars for it in pursuance of the contract; that he gave the check for it to Mrs. Mary V. Foushee, appellee's mother; that they turned the rent notes over to him, and that he went into possession of it the year he bought it. He says he met Mrs. Mary V. Foushee at Wolff & Goldman's store where the money was paid and the deed delivered to him. Mrs. Foushee stated that she and her son were there to execute the deed. The deed was drawn up at the request of Mrs. Foushee and appellee. Mrs. Foushee signed the deed at the store. J. M. Foushee was present. He did not tell appellant that he would not sign the deed, but did not sign it because appellant's lawyer had told him it was not necessary.

Isaac Goldman testified among other things as follows: "The day the trade was closed Mack Foushee and Mrs. Foushee were present. We were all around the door to our little office. Mack was there, and tried to get in and sign the deed, and one of the attorneys told him there was no use in his signing the deed. We paid Mrs. Foushee the money for John Lee, of course."

J. W. Phillips, the attorney for Lee, testified: "I was present at the time the deed was signed, and Mack Foushee was there, and said he had come to sign the deed, and I told him there was no need for him to sign the deed, and he said all right, that he was willing to sign it if it was necessary. I told Mack it was unnecessary for him to sign the deed because he had no interest in the land. I am acquainted with the decision in the 67th Ark. of *Williams* v. *Robinson*. Going by the abstract,

we considered that the will conveyed a title in fee simple, and, although they both sold the land, I didn't think it was necessary for him to sign the deed."

John Henck testified: "Was bookkeeper for Wolff-Goldman Mercantile Company. Took Mrs. Foushee's acknowledgment to the deed to Lee. To the best of my recollection Mack Foushee was present. He didn't sign it. He was told it was not necessary. I think Judge Phillips told him it was not necessary. After check was given her, they went away. I don't know which way they went. Cannot swear positively to the details given. I think J. M. Foushee was there. I won't be positive, but he was there about the time. The check was made payable to the order of Mary V. Foushee."

Sigmund Wolff testified: "Mack Foushee was there at the office. He didn't sign the deed because the attorneys did not think it necessary. Didn't have anything to do with the purchase. Lee directed me to draw the check. We loaned the money; interested in the suit. I heard the attorneys tell John Lee it was not necessary for Mack to sign the deed."

Mrs. Hite further testified: "I remember when Mrs. Foushee went to Wolff & Goldman's store to sign deed. Don't know the month. Mack left the house with her. Mrs. Foushee said they were going to sign a deed. I have heard Mack say he was willing to sign the deed. Mrs. Foushee wanted to sell the land on account of the Rankin suit. John Lee was out at my house. I don't know where Mack went when he left the house. She said she didn't want Mack's wife to get any of the money. I heard her say she was going to spend the money that she sold the place for all on herself to live on. The check was made payable to order of Mary V. Foushee, was for $1,500, and specified 'for land sold John V. Lee.'"

From a decree holding that appellant was the owner of the land in controversy and awarding him possession thereof, this appeal has been duly prosecuted.

*Joseph W. Phillips*, for appellant; *Otis W. Scarborough*, of counsel.

1. Either the original will, a certified copy of it or of the record thereof, or the record itself was the only competent evidence to establish appellee's claim. Neither was exhibited or introduced. 4 Enc. of Ev. 823; 24 Am. Dec. 57.

2. The preponderance of testimony makes it clear that appellee knew all about the transaction, participated therein, was ready and willing to sign the deed and went with his mother at the time the deed was executed for the purpose of signing jointly with her, and directed the payment of the money to her. Appellant was put in possession, made lasting and valuable improvements. A clear case for specific performance is established, and its denial works a fraud upon his rights. 83 Ark. 414; 16 Ark. 363; 21 Ark. 110.

3. By failing to speak out and notify appellant that he claimed title before the purchase money was paid and also by directing that the money be paid to his mother, appellee is estopped. Bishop on Contracts, 1st Ed. § 128; 55 Ark. 113. Appellee is also barred by his laches in failure to assert title in apt time. 55 Ark. 92; Id. 85; 3 Brown, Ch. Rep. 640; 7 How. 234; 87 Ark. 232.

*Gustave Jones,* for appellee.

1. Appellant has not denied the will—only the effect of language therein. What is not denied is admitted.

2. Appellant was told that appellee had title. There can be no estoppel as to the remainderman where the vendee is not misled. 51 Ark. 61. Besides, there is no proper plea of estoppel. The acts, representations or silence relied on must have been wilfully intended to mislead. 16 Cyc. 726; 49 Ark. 218; 59 Ark. 499.

3. Appellee derives title, not from his father or mother, but from his grandfather. There could be no recovery from him when the title failed which his mother sought to convey and warrant. 30 Ark. 632, 639.

4. Laches was not pleaded; but, if it had been, action was brought within a reasonable time after he was informed of his rights. 75 Ark. 382.

WOOD, J. (after stating the facts.) The appellee's complaint should have been dismissed for want of equity. For, conceding that appellee under the will of his grandfather was the owner of the land in fee at the death of his father (*Wilmans v. Robinson,* 67 Ark. 577), yet the decided preponderance of the evidence shows that he had sold same to appellant. We have given in the statement of facts the substance of all the evidence

that relates to the sale of the land by appellee to appellant, and practically all of it, except appellee's own testimony, shows that he made such sale. Appellant testifies that he made the contract with appellee and his mother to purchase the land from them for a consideration of fifteen hundred dollars, and that they afterwards met him at the store of Wolff & Goldman for the purpose of consummating the trade, i. e., making him a deed and getting the purchase money. He shows that he met them there, and that he performed his part of the contract by paying the purchase money, and that Mrs. Mary V. performed her part by signing the deed, and that appellee was present ready and willing to sign, but was dissuaded from doing so by the advice of the attorney of appellant that it was unnecessary. The attorney was of the opinion that appellee had no title, and therefore it was unnecessary for him to sign. But the proof shows that he was there for that purpose. It is clear that the deed would have been signed by him but for the mutual mistake of law on his part and on the part of appellant caused by the opinion of counsel. The proof shows that appellee fully intended to sign the deed and thereby convey all the interest he might have. Equity looks on that as done which ought to have been done. "Equity imputes an intention to fulfill an obligation." These familiar maxims of equity are sufficient authority for denying to appellee under the evidence in this record the relief which he seeks, and for granting to appellant the relief sought by his cross-complaint. Smith's Principles of Equity, pp. 15, 16; 1 Pom. Eq. Jur. § 363, et seq., 368; Fetter on Equity, §§ 10, 11.

The proof clearly takes the case out of the operation of the statute of frauds, for appellant paid the purchase money and went into possession under his contract of purchase made with appellee and his mother, and made permanent and valuable improvements. *Arkadelphia Lumber Co.* v. *Thornton*, 83 Ark. 414, and cases there cited.

The decree is therefore reversed, and the cause is remanded with directions to enter a decree in accordance with this opinion, decreeing the title to the land in controversy to be in appellant, and granting the prayer of his cross-complaint for specific performance, and dismissing appellee's complaint for want of equity.